## WILCOX v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 8633, 8634.

Circuit Court of Appeals, Sixth Circuit.

June 6, 1941.

Erwin R. Effler, of Toledo, Ohio, (H. A. Mihills, of Washington, D. C., on the brief), for petitioner.

William L. Cary, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and John A. Gage, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

These consolidated cases arise upon petition to review a decision of the Board of Tax Appeals which sustained the Commissioner of Internal Revenue in a determination of deficiencies in income tax of $3,053.77 and $3,561.19 against the taxpayer for the taxable years 1935 and 1937 respectively. Petitioner's decedent, Florence Scott Libbey, had claimed certain amounts as deductions for necessary business expenses incurred in the management of her property, and the disallowance of these deductions resulted in the deficiencies determined.

The controlling question is whether the decedent, through her agent, the petitioner, was "carrying on a . . . business" within the meaning of Section 23(a) of the Revenue Acts of 1934 and 1936, 26 U.S. C.A. Int.Rev.Acts, pages 671, 827. The pertinent language used in the statutes is identical for the two years involved. It allows as deductions from gross income "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

The decedent died on March 12, 1938, aged 82 years, leaving an estate valued for estate tax purposes at $4,407,000. The petitioner, who is executor of decedent's estate, had been secretary and confidential assistant to her husband, Edward Drummond Libbey, a prominent glass manufacturer in Toledo, Ohio, from whom she inherited a considerable fortune upon his death in 1925. Shortly thereafter decedent employed the petitioner to manage her affairs, and he continued to act as decedent's agent until her death. Petitioner was paid a salary of $5,000 a year for his services. Approximately one-fourth of petitioner's time was devoted to decedent's affairs.

At her husband's death decedent's estate had a book value of approximately $1,100,000. On January 1, 1926, her property consisted principally of stocks and bonds, and she owned a home in Toledo, Ohio, a small winter home in Ojai, California, and a life interest in certain Toledo business properties. Decedent purchased from her husband's estate some 110 acres of land opposite that already owned by her in California, in order to preserve the outlook for her property and to control its future. The larger part of the California property was sold before 1930 and the remainder, including decedent's winter home there, was sold in 1937. Decedent paid two men a total of $75 a month to look after the California property, and petitioner participated in its management and sale.

Petitioner paid all of decedent's bills, including purely personal expenses, had a set of books kept for the decedent under his supervision, and made monthly and annual reports to the decedent in writing. He was placed on the board of directors of the Owens Bottle Machine Company, in which decedent owned preferred and common stock, on April 15, 1936, and for several years maintained an office in one of the buildings occupied by that company. Although decedent's books were kept there, she paid no office rent.

While most of decedent's property was in the form of securities, the investment activities were not extensive or numerous. As found by the Board, during the taxable years petitioner made only twelve purchases, five in 1935 and seven in 1937. He made one sale in 1935, and three in 1937. In 1935, Liberty and Federal Land Bank bonds with a par value of $1,504,000, were called, and decedent accepted United States Treasury notes and other land bonds in exchange. Most of decedent's transactions during the taxable years were effected because of the maturity or calling of obligations.

The expenses claimed to be allowable deductions are made up of salaries paid to petitioner and his assistants, auditors' fees, traveling expenses, and various items usual in maintaining an office. The Board decided that the decedent, through petitioner, did no more than a passive investor would do, and hence sustained the Commissioner's disallowance of the deductions claimed.

◼ Petitioner urges that he was actively, regularly, and continuously attending to the management of decedent's properties; that he greatly enhanced the value of her estate, and that his extensive, varied, continuous and regular activities demonstrate that the decedent was engaged in business within the purview of the statute. But the fact that the estate may be large and the work required in management of numerous security investments may be continuous and extended does not require a finding that such management constitutes carrying on a business within the meaning of the income tax provisions. Nor does determination of what constitutes "carrying on * * * business" depend upon the size of the estate, no matter how much attention is required properly to conserve it or how many people are employed in the process. Higgins v. Commissioner, 312 U. S. 212, 61 S.Ct. 475, 85 L.Ed. ——; City Bank Farmers Trust Co., Trustee, v. Helvering, Commissioner, 312 U.S. ——, 61 S.Ct. 896, 85 L.Ed. ——, decided April 28, 1941; United States v. Pyne et al., Ex'rs, 312 U.S. ——, 61 S.Ct. 893, 85 L.Ed. ——, decided April 28, 1941.

◼ The criteria applied by the Board in its decision were more favorable to the taxpayer than would be required under the rule in the Higgins case, supra. The findings from which it concluded that the decedent was a mere passive investor have substantial support in the record and are binding upon us. Under those findings the situation is the same as that presented in the Higgins case, and the holding there squarely applies, namely, that the petitioner merely kept records and collected interest and dividends from the securities through managerial attention to the decedent's investments.

◼ Petitioner urges that at least with reference to the Toledo real estate he was engaged in business for the decedent, claiming that in the taxable years he handled all repairs, leases, and improvements of these properties. While the record supports this blanket statement, it does not reveal what these transactions were. The numerous financial statements introduced in evidence purport to show the complete picture of decedent's assets during the taxable years and the character of her income and expenses. If there are any items included which reflect rents received and expenses incurred in connection with business property in Toledo to which petitioner referred in his oral testimony, they are not so identified. No items of rent income

were reported as such in the original income tax returns for either 1935 or 1937. If we were to assume that the expenses attributable to the management of the Toledo business property are proper deductions, the record fails to provide any basis for determining the proportion of deductions claimed to be allocable thereto. Since it is incumbent upon the taxpayer to establish all facts necessary to compute as well as to justify a deduction claimed, it follows that the Board correctly applied the statute.

The orders and decisions are affirmed.